Jason B. Lattimore
**The Law Office Of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile:  (973) 264-1159

*Attorneys for Plaintiff,*
*Interlink Products International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOME EXPRESSIONS, INC., <br><br> Defendant. | Case No: <br> CIVIL ACTION <br><br> **COMPLAINT &** <br> **JURY TRIAL DEMAND** |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendant, Home Expressions, Inc. ("Defendant"), as follows:

### THE PARTIES

1.      Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2.      On information and belief, Defendant is a Delaware corporation with its principal place of business at 195 Raritan Center Parkway, Edison, NJ 08837.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331.  The Court also has jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims alleged are so related to the claims over which the Court has original jurisdiction that they form part of the same case.

4.      This Court has personal jurisdiction over Defendant in that it does business regularly in this district.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

**NATURE OF THE CLAIMS**

6.      This case arises out of Defendant's use of false and misleading representations and omissions regarding its showerhead products to unfairly compete with Interlink.  Defendant misrepresents to purchasers that its showerhead products comply with applicable laws when, in fact, Defendant sells illegal showerheads that violate multiple federal statutes and regulations. Defendant sells its illegal showerheads in direct competition with Interlink, using the cost advantage derived from producing cheaply made, non-compliant product to undersell Interlink while deceiving purchasers as to the true nature of Defendant's showerheads.  Defendant has unlawfully benefited from its conduct to the detriment of Interlink.  To address these wrongs, Interlink asserts claims against Defendant for false advertising under the Lanham Act, false advertising under N.J.S.A. § 56:8-2 *et seq.*, common law unfair competition and tortious interference with prospective economic advantage.

**FACTS**

7.      Plaintiff, Interlink, is a New Jersey based research & development company specializing in the development, manufacturing and marketing of innovative consumer and

professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

8.      Interlink's products include several lines of showerheads that can be purchased from various sources, including Groupon, Inc. ("Groupon") through the Groupon.com website. Interlink's products can also be purchased from major retailers such as Wal-Mart and Bed Bath & Beyond.

9.      The Energy Policy Act of 1992, and the regulations promulgated pursuant thereto (collectively the "EP Act") require that all showerheads manufactured after January 1, 1994 have a maximum water flow rate of "2.5 gallons per minute (9.5 liters per minute) when measured at a flowing pressure of 80 pounds per square inch gage (552 kilopascals)." 10 CFR Part 430.32(p); 42 U.S.C. § 6295(j).  The EP Act also requires all showerheads to "meet the requirements of ASME/ANSI A112.18.1M-1989, 7.4.3(a)" (42 U.S.C. § 6295(j)), which sets forth additional standards for showerheads.

10.      In addition to the flow rate restrictions imposed under 10 CFR Part 430.32(p), the federal regulations promulgated pursuant to the EP Act (specifically 16 C.F.R. Part 305.16) require that showerheads "bear a permanent, legible marking indicating the flow rate," that they be marked "A112.18.1M" to reflect compliance with the applicable ASME (American Society of Mechanical Engineers) standard, and that the packaging for all showerheads reflect the flow rate and be marked with "A112.18.1M."

11.      The flow rate restrictions and related requirements set by the EP Act were enacted to serve the important public interest of water conservation.

12.     Compliance with the flow rate restrictions of the EP Act impacts the characteristics of showerheads by limiting the amount of water expelled by the showerhead at a given water pressure over any given period of time.  Successful showerhead manufacturers, such as Interlink, sell products designed to achieve excellent performance at lower flow rates.  The production of high-performing compliant products involves research and the expenditure of resources that, ultimately, increases the cost of such products.

13.     Manufacturers that illegally sell non-compliant, high-flow showerheads gain an unfair competitive advantage over compliant manufacturers by (a) avoiding the cost of producing compliant showerheads that perform to levels acceptable to consumers, which allows them to sell at lower prices; and (b) by misleading consumers into believing that the showerheads they sell are competitive with or superior to compliant showerheads (because the high water pressure of their showerheads provides a better showering experience) when, in fact, the performance of their non-compliant showerheads is attributable to an unlawfully high flow rate.

14.     On information and belief, Defendant contracts with suppliers of cheaply made, non-compliant showerheads so that it can sell low-cost showerheads illegally in the United States to unwitting purchasers.

15.     Defendant competes with Interlink for showerhead sales to U.S. purchasers, including Groupon.

16.     Groupon, through its Groupon Goods division, is one of the leading sellers of consumer goods on the Internet.  Among other aspects to its business, Groupon purchases products from sellers such as Interlink and Defendant and resells the products.

17.     Because Groupon is a high volume seller, it has the potential to purchase large quantities of products and, therefore, represents a significant potential source of sales revenue to the vendors with which it does business.

18.     Approximately 90% of the showerheads available through Groupon are produced by Interlink.

19.     Defendant sells a cheap, illegal version of Interlink's dual showerhead combination product (which combines fixed and handheld showerheads into one showerhead unit) under Defendant's Home Collections brand in direct competition with Interlink.  Groupon's showerhead product listings displayed Interlink's and Defendant's products virtually side-by-side.

20.     In promoting its showerheads to Groupon, and in its efforts to compete with Interlink for sales to Groupon, Defendant misrepresented to Groupon that Defendant's illegal, non-compliant showerheads comply with all applicable laws when, in fact, the showerheads violate numerous requirements imposed by the EP Act.

21.     In order to induce Groupon to purchase Defendant's showerheads, Defendant specifically represented and warranted that its products are "manufactured, stored, packaged, labeled, supplied and delivered or shipped (as applicable), in accordance with all applicable international, federal, state and local laws and all executive orders and rules and regulations issued thereunder."   A copy of the Groupon vendor Terms & Conditions reflecting the representations made by Defendant are attached to this Complaint as Exhibit A.  The specific representations quoted in this paragraph are set forth in section § 15(a) of the Terms & Conditions.

22.    Defendant further represented and warranted that the products it was selling to Groupon did not infringe the intellectual property rights of any third party.  *See* Exhibit A at § 15(e).

23.    On information and belief, Defendant has sold a significant volume of its illegal showerheads to Groupon and other purchasers.  On information and belief, during the timeframe between January 1, 2015 and February 16, 2015 alone, Defendant sold in excess of 5,000 units of showerheads to Groupon.  On information and belief, none of those showerheads complied with the EP Act's flow rate restrictions and labeling requirements, and none of the products complied with the ASME A112.18.1M-1989 standard.  Interlink has inspected samples of Defendant's product and confirmed their noncompliance.  Pictures of samples of Defendant's showerheads showing that they do not contain the requisite 2.5 gallon-per-minute flow regulator are attached as Exhibit B.

24.    Additionally, on information and belief, at least one of Defendant's products, its Home Collections combination dual showerhead, infringes U.S. Patent No. 7,299,510 ("the '510 patent"). See attached Exhibits C (the '510 patent) and D (comparison of Defendant's device to claim 1 of the patent).  Although this patent does not belong to Interlink, its infringement by Defendant is consistent with a pattern of deception and willful disregard for government regulations and the intellectual property rights of others for the purpose of gaining an unfair competitive advantage.

25.    On information and belief, Defendant continues to misrepresent the nature of its showerheads in order to unfairly compete with Interlink.

6

26.     Defendant's representation that its products were manufactured and labeled in accordance with all applicable laws and regulations when, in fact, the showerheads do not comply with the EP Act was and is literally false.

27.     On information and belief, Defendant's representation that its products do not infringe third-party intellectual property rights was and is literally false.

28.     The questions of whether Defendant's showerheads complied with the law and were non-infringing were material to Groupon's decision to purchase showerheads from Defendant.  In fact, Groupon required defendant to warrant that its showerheads comply with the law and do not infringe the intellectual property rights of others as a condition of doing business with Groupon.

29.     Defendant knew or reasonably should have known that its showerheads did not comply with the EP Act.

30.     On information and belief, Defendant knew or reasonably should have known that its showerheads infringe the '510 patent.

31.     Absent Defendant's misrepresentations to Groupon, and associated omissions, it is likely that Interlink would have made the sales to Groupon that Defendant made.

32.     Defendant's misrepresentations and omissions regarding the nature of its showerheads also deceive other purchasers of its showerheads and unfairly enhance Defendant's market position and demand for its products.

33.     Nowhere in Defendant's product information is it disclosed that Defendant's showerheads violate U.S. law.  To the contrary, Defendant sells its showerheads as if the showerheads were fully compliant, which they clearly are not.

34.     Defendant's failure to disclose the nature of its showerhead's to potential customers constitutes an intentional omission of material fact.

35.     Defendant's sale of its showerheads in the United States necessarily implies that the showerheads have been manufactured in accordance with and comply with the law.

36.     On information and belief, environmental compliance is material to a significant number of customers who have purchased Defendant's showerheads.

37.     Because Defendant sells an identical style of product to that of Interlink, Defendant's misrepresentations and omissions with respect to the nature of its showerheads are likely to leave potential purchasers with the misimpression that the only significant difference between Defendant's combination showerhead and Interlink's corresponding product is Defendant's lower price when, in fact, Defendant sells an inferior product that does not meet applicable legal standards.

38.     On information and belief, customers who purchased Defendant's showerheads would not have done so had they known the true nature of the showerheads.

39.     Absent Defendant's unlawful misrepresentations, omissions and price competition (taken together or each standing alone), it was likely that the customers who purchased Defendants' products would have purchased Interlink's products.

40.     On information and belief, Defendant's conduct described in the preceding paragraphs was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Interlink to an award of enhanced damages and reasonable attorney's fees.

41.     Through the foregoing conduct, Defendant has acted in wanton and willful disregard of Interlink's rights such that Interlink is entitled to an award of punitive damages.

## COUNT I
### (False Advertising - 15 U.S.C. § 1125 (a))

42.     Plaintiff restates and realleges the allegations of paragraphs 1-41 as if fully set forth herein.

43.     Through the foregoing conduct, Defendant made and continues to make false or misleading statements and omissions as to the nature and qualities of its showerheads.

44.     Defendant's false and misleading statements and omissions regarding its showerheads are literally false, deceived and continue to deceive Groupon and customers purchasing Defendant's showerheads, and otherwise have the tendency to deceive potential purchasers of Defendant's showerheads.

45.     The deception brought about by Defendant's false and misleading statements and omissions detailed in the preceding paragraphs was and is material in that those statements and omissions likely influenced and will continue to influence purchasing decisions concerning Defendant's showerheads.

46.     Defendant's goods travel in interstate commerce.

47.     Defendant's deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

48.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT II
### (False Advertising – N.J.S.A. 56:8-2 *et seq*.)

49.     Plaintiff restates and realleges the allegations of paragraphs 1-48 as if fully set forth herein.

50.     Defendant's showerheads are consumer goods.

51.     Through its conduct in connection with the sale and advertisement of its showerheads, Defendant has used and employed unconscionable commercial practices, deception, fraud, and misrepresentations concerning the nature of its showerheads and has knowingly concealed, suppressed, or omitted material facts concerning the nature of its showerheads with intent that Groupon and other potential purchasers rely upon such concealment, suppression or omission.

52.     As a result of the foregoing conduct, Interlink has suffered ascertainable loss including lost sales and lost market share.

53.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT III
### (Common Law Unfair Competition)

54.     Plaintiff restates and realleges the allegations of paragraphs 1-53 as if fully set forth herein.

55.     Through the foregoing conduct, Defendant has committed common law unfair competition.

56.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT IV
### (Tortious Interference With Prospective Economic Advantage)

57.     Plaintiff restates and realleges the allegations of paragraphs 1-56 as if fully set forth herein.

58.     Through the foregoing conduct, Defendant intentionally and improperly interfered with Interlink's prospective sales to Groupon.

59.     By deceiving Groupon into believing that its illegal showerheads comply with the law, Defendant prevented Interlink from selling its lawful showerheads to Groupon.

60.     It is likely that, absent Defendant's wrongful and deceptive conduct, Interlink would have made the sales to Groupon that Defendant made.

61.     Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunction relief, damages, punitive damages and any other relief the court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

I.      That Defendant, its officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

A.  Cease making or employing any false or misleading statements or omissions concerning the nature of Defendant's showerheads as it concerns compliance with applicable statutes or regulations;

B.  Take all steps necessary to remove Defendant's showerheads that do not comply with applicable statutes and regulations from the market and otherwise stop selling showerheads that do not comply with applicable laws;

C.  Provide notice to all resellers of Defendant's showerheads, such as Groupon, disclosing that the showerheads do not comply with applicable regulations and offering a full refund for all quantities purchased;

D.  Issue and properly disseminate a recall notice with respect to all purchasers of Defendant's showerheads in the United States offering a full refund to any consumers who purchased Defendant's products.

II.     That Plaintiffs obtain the following relief:

A.  An accounting and disgorgement of all profits the Defendant has gained through the sale of non-compliant showerheads;

B.  Compensatory damages in an amount not less than $5 million;

C.  Treble damages;

D.  Reasonable attorneys' fees and costs;

E.  Punitive damages in an amount not less than $15 million; and

F.  Any other relief in Interlink's favor that the court deems just and proper.

Dated: March 9, 2015                    Respectfully submitted,

                                        The Law Office Of
                                        JASON B. LATTIMORE, ESQ. LLC


                                        By  s/ Jason B. Lattimore
                                            Jason B. Lattimore
                                            55 Madison Avenue, Suite 400
                                            Morristown, NJ 07960
                                            Telephone: (973) 998-7477
                                            Facsimile:  (973) 264-1159

                                            *Attorneys for Plaintiff*
                                            *Interlink International Products, Inc.*


## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by

jury.


Dated: March 9, 2015                    Respectfully submitted,

                                        The Law Office Of
                                        JASON B. LATTIMORE, ESQ. LLC


                                        By  s/ Jason B. Lattimore
                                            Jason B. Lattimore
                                            55 Madison Avenue, Suite 400
                                            Morristown, NJ 07960
                                            Telephone: (973) 998-7477
                                            Facsimile:  (973) 264-1159

                                            *Attorneys for Plaintiff*
                                            *Interlink International Products, Inc.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies that, to the best of his knowledge, this matter is not the subject of any other action pending in any court, or any pending or contemplated arbitration or administrative proceeding.  The undersigned further certifies that, to the best of his knowledge, there are no additional parties who should be joined in this matter.

Dated: March 9, 2015                    Respectfully submitted,

                                        The Law Office Of
                                        JASON B. LATTIMORE, ESQ. LLC

                                        By  s/ Jason B. Lattimore
                                            Jason B. Lattimore
                                            55 Madison Avenue, Suite 400
                                            Morristown, NJ 07960
                                            Telephone: (973) 998-7477
                                            Facsimile:  (973) 264-1159

                                            *Attorneys for Plaintiff*
                                            *Interlink International Products, Inc.*